**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KRISTY BARNES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-01178-O-BP** |
| | § | |
| **TARRANT COUNTY, TEXAS,** *et al.***,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On December 3, 2024, *pro se* Plaintiff Kristy Barnes ("Barnes") filed a Complaint against Tarrant County, Texas and various other Defendants. ECF No. 1. On December 10, 2024, the Court granted Barnes permission to proceed *in forma pauperis* ("IFP"). ECF No. 5. By Order dated December 20, 2024, the Court found that "further information would be helpful to the Court in adjudicating this case," and ordered Barnes to complete a Questionnaire. ECF No. 6. Barnes completed that Questionnaire on April 15, 2025. ECF No 20. Thereafter, on July 22, 2025, the Court ordered Barnes to file an Amended Complaint. ECF No. 26. Barnes did so on January 30, 2026. ECF No. 33. Now, after reviewing Barnes's Amended Complaint and the applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **DISMISS** this suit pursuant to 28 U.S.C. § 1915(e)(2) in its entirety **EXCEPT** for her claim against John Doe for a procedural due process violation under 42 U.S.C. § 1983.

I.      **BACKGROUND**

In January 2023, *pro se* Plaintiff Kristy Barnes attended a proceeding involving her son at the Lake Worth municipal court. During that proceeding, municipal attorney Craig Magnuson began questioning her son, and Barnes whispered to her son during that exchange. Magnuson then

told Barnes to stop talking, and a verbal exchange between them followed. Thereafter, Magnuson ordered a bailiff in the court to arrest Barnes. She was then taken to Lake Worth jail for two days, followed by a further two day stay in the Tarrant County Jail. During that time, Barnes alleges no one ever took her before a magistrate judge. In the aftermath of these incidents, Tarrant County prosecutors pursued a case against Barnes, which was dismissed seven months later in August 2023. In December 2024, Barnes filed the present suit, asserting § 1983 claims for violations of her constitutional rights against the City of Lake Worth, Tarrant County, and a variety of municipal officials in their individual capacities. *See generally* ECF Nos. 20, 33.

## II.    LEGAL STANDARD

### A.    Screening under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii)

Because Barnes proceeds *in forma pauperis*, her Amended Complaint is subject to *sua sponte* dismissal if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). To state a viable claim for relief, Rule 8 requires a "short and plain statement of the claim showing that the pleader is 4 entitled to relief." Fed. R. Civ. P. 8(a)(1). To be entitled to relief, the complaint must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To aid the Court in determining whether it should dismiss an *in forma pauperis* complaint, the Fifth Circuit has approved the use of questionnaires. *Spears v. McCotter*, 766 F.2d 179, 181-

82 (5th Cir. 1985). A plaintiff's responses to such a questionnaire become part of the pleadings. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996).

### B.    *Pro se* pleadings

The Court subjects the pleadings of *pro se* parties to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed pro se . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825–26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and the Fifth Circuit thus recommends that suits be dismissed without prejudice on § 1915 dismissals. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As a result, courts generally allow plaintiffs at least one opportunity to amend following a § 1915 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Id.* at 329. An incurable defect may arise when a complaint's facts are "not actionable as a matter of law." *Id.* In such situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

The Court may also appropriately dismiss an action with prejudice if the Court finds that the plaintiff has alleged her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that the plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001)

## III.    ANALYSIS

Barnes' Amended Complaint asserts claims against eight Defendants: Tarrant County, the City of Lake Worth, Craig Magnuson, Holly Fimbres, a John Doe bailiff, Rachel Taylor, Phil Sorrells, and John Robert McCoy. ECF No. 33 at 2, 13. Although Barnes lists "Tarrant Co, TX" twice, the Court construes this as a singular Defendant: Tarrant County, Texas. *See* ECF No. 33 at 14. Barnes sues each of the natural person Defendants in their individual capacities. *Id.* at 2.

### A.    Absolute prosecutorial immunity bars Barnes' claims against Taylor and Sorrells.

Barnes alleges that Rachel Taylor, an Assistant Tarrant County District Attorney, "knew or should have known that the prosecution lacked probable cause [and] was conducted w/o [without] judicial authority, [and] failed to do a proper investigation, thereby permitting the constitutional violations to continue." *Id.* at 7. Barnes also asserts that Phil Sorrells, the District Attorney of Tarrant County, "failed to supervise, correct, investigate or terminate the unlawful prosecution, thereby permitting the constitutional violations to continue. He is paid to know [and] do better." *Id.* Despite these allegations, both prosecutors have absolute prosecutorial immunity from Barnes' claims.

"[P]rosecutors are absolutely immune for actions they take 'in preparing for the initiation of judicial proceedings or for trial, and [that] occur in the course of [the prosecutor's] role as an

advocate for the State." *Parria v. Cvitanovich*, No. 23-3663, 2025 WL 2754743, at \*10 (E.D. La. Sept. 26, 2025) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). And this immunity "shelters prosecutors even when they act 'maliciously, wantonly or negligently.'" *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016). "Conversely, a prosecutor is afforded only qualified immunity for acts performed in the course of administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Wooten v. Roach*, 964 F.3d 395, 407 (5th Cir. 2020) (internal quotation marks and citations omitted).

A prosecutor is an advocate for the State, and the role of the prosecutor is one that involves the use of an advocate's judgment and discretion. The ability to freely exercise these dispositions to best serve the public and the law is an important part of the prosecutorial profession, and it is what prosecutorial immunity serves to protect. *See Singleton v. Cannizzaro*, 956 F.3d 773, 780 (5th Cir. 2020); *see also Parria*, 2025 WL 2754743, at \*10 (writing that the parts of a prosecutor's job that are "quintessentially advocatory" are those that generally see prosecutorial immunity attach). Included among the advocatory functions of a prosecutor's job are "the professional evaluation of the evidence assembled by the police," *Buckley*, 509 U.S. at 273, and "the decision to file or not file criminal charges." *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) (citing *Oliver v. Collins,* 904 F.2d 278, 281 (5th Cir.1990)); *see also Wearry v. Foster*, 33 F.4th 260, 265-66 (describing the difference between a prosecutor's advocatory and investigative activities, with the latter being "not entitled to absolute immunity because investigation was not 'part of [a prosecutor's] traditional official functions.'" (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))).

Here, Barnes sues Taylor and Sorrells for allegedly conducting "no investigation [and] cho[osing] to continue the prosecution against me based on the charges originated by the municipal attorney. Despite the improper arrest[,] they failed to review . . . the case [and] subjected me to multiple court appearances." ECF No. 20 at 4. But this alleged behavior falls entirely within the scope of a prosecutor's duties and the remit of prosecutorial immunity. Accordingly, Barnes' allegations about their alleged failure to properly evaluate her case before pursuing charges, and their decision to pursue charges, concern activities that cannot form the basis of a § 1983 claim against Taylor or Sorrells. "Prosecutors are absolutely immune from § 1983 suits in their individual capacities for actions that are within the scope of their prosecutorial duties." *Quinn*, 326 F. App'x at 292 (citing *Brooks v. George Cnty.*, 84 F.3d 157, 168 (5th Cir. 1996)). And this absolute immunity extends even to Barnes' § 1983 claim for malicious prosecution since she premises it too on these same factual allegations of behavior firmly within the scope of Taylor's and Sorrells' prosecutorial duties. *Compare* ECF No. 33 at 7-8, *with* ECF No. 20 at 4; *see also Moore v. City of Clarksdale*, No. 4:22-cv-41-DMB-DAS, 2024 WL 1316212, at *8 (N.D. Miss. Mar. 27, 2024) (citing *Loupe*, 824 F.3d at 539).

Importantly, Barnes does not allege that any prosecutor fabricated evidence, *see Buckley*, 509 U.S. at 274 (conduct not entitled to absolute immunity), made an investigative decision (such as ordering a search and seizure), *see Singleton*, 956 F.3d at 781 (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (listing examples of conduct not entitled to absolute immunity)), or participated in any analogous activity that could strip Taylor or Sorrells of their absolute prosecutorial immunity. *See Hoog-Watson v. Guadalupe Cnty.*, 591 F.3d 431, 438 (5th Cir. 2009) (absolute immunity not afforded to "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." (quoting

*Buckley*, 509 U.S. at 273)); *see generally* ECF No. 33. Rather, Barnes merely objects to Taylor's and Sorrells' evaluation of Magnuson's allegations against her, their decision to pursue charges, and their prosecution of their case. But these objections do not state a § 1983 claim against these prosecutors.

Next, regarding Sorrells only, Barnes also summarily alleges that he failed in his duties as the Tarrant County District Attorney "to supervise, correct, investigate, or terminate the unlawful prosecution." ECF No. 33 at 7. But the District Attorney and all "[s]upervising prosecutors enjoy absolute immunity for claims arising from allegations that they failed to properly train or prevent unlawful conduct when the underlying conduct would be protected by absolute immunity." *Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 410 (E.D. La. 2019) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 345-48 (2009)), *aff'd in part*, 956 F.3d 773 (5th Cir. 2020). Because Barnes does not allege any conduct from Tarrant County District Attorney's Office prosecutors other than that which absolute prosecutorial immunity protects, it is legally impossible to impose § 1983 liability on Sorrells for an alleged failure to prevent such conduct.

### B.    Judicial immunity bars Barnes' claims against Judge McCoy.

Barnes also sues John Robert McCoy, the presiding judge of Tarrant County Criminal Court No. 3, in his individual capacity. ECF No. 33 at 2. Barnes alleges that Judge McCoy "created a hostile environment through intimidation, affecting [her] right to a fair trial. He along w/ [with] others failed to do any investigation [and] was more than happy continuing to prosecute plaintiff." *Id.* at 7. She also alleges that Judge McCoy "failed to review or dismiss the case [and] subjected [her] to multiple court appearances." ECF No. 20 at 4. Despite these allegations, Barnes' § 1983 claims against Judge McCoy fail at the outset due to his judicial immunity.

"It is well established that judges enjoy absolute immunity for judicial acts performed in judicial proceedings." *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996) (citation omitted). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Allegations of bad faith or malice do not overcome this immunity, which "applies even when the judge is accused of acting maliciously and corruptly." *Ballard v. Wall,* 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Mireles*, 502 U.S. at 11). "There are two—and only two—circumstances in which immunity yields: when a judge acts outside [his] judicial capacity, or when [he] acts in the clear absence of all jurisdiction." *Jones v. King*, 148 F.4th 296, 301 (5th Cir. 2025)

First, Barnes does not allege that Judge McCoy lacked all jurisdiction to oversee her criminal proceedings. While she asserts that her arrest lacked probable cause and that Judge McCoy allegedly abetted the unconstitutional actions Barnes suffered, she does not claim that he lacked jurisdiction. *See generally* ECF Nos. 20, 33. Therefore, if Barnes' claim against Judge McCoy were to survive, she would need to plausibly allege he acted outside of his judicial capacity.

Not every act that a judge performs falls with his judicial capacity. *See Jones*, 148 F.4th at 300. Instead, an act is judicial when it (1) is a "normal judicial function," (2) "occurred in the courtroom or appropriate adjunct spaces," (3) is "centered around a case pending before the court," and (4) "arose directly out of a visit to the judge in his official capacity." *Ballard*, 413 F.3d at 515 (citation omitted). But an act does not have to tick each box to be judicial. "Courts need not march through all four factors if one 'overarching point' resolves the matter." *Jones*, 148 F.4th at 301 (quoting *Daves v. Dall. Cnty.*, 22 F.4th 522, 539 (5th Cir. 2022) (en banc)). This is because "[s]ome acts are 'clearly' judicial—or so 'inextricably linked' to judicial acts that no further analysis is needed." *Id.* The "hallmark" of a judicial act is the exercise of a discretionary judgment. *Id.*

Here, Barnes alleges that Judge McCoy "continu[ed] to prosecute" her, despite "fail[ing] to do any investigation." ECF No. 33 at 7. First, the Court construes Barnes' allegation to mean that Judge McCoy continued presiding over her case. It is the State of Texas (whom the District Attorney's Office and its prosecutors represent), not judges, who prosecute criminal defendants. To this end, Barnes' grievance with Judge McCoy appears to be that he simply carried out his duties as the judge in the case and did not dismiss the case on Barnes' timetable.

Barnes' allegation that Judge McCoy failed to investigate the prosecution's case is unpersuasive because she does not explain what investigation Judge McCoy was obligated but allegedly failed to commence and complete. Next, Barnes' § 1983 claims against him also fail to the extent she alleges as unconstitutional Judge McCoy's act of presiding over Barnes' criminal proceedings despite the alleged procedural infirmities Barnes contends existed with the initial stages of her prosecution. This is because Judge McCoy's role in presiding over those proceedings is clearly judicial and inarguably meets every factor identified by the Fifth Circuit. *See Ballard*, 413 F.3d at 515. The same is true of Judge McCoy's decisions concerning whether to dismiss Barnes' case and when to do so. At every turn, Barnes' well-pleaded facts only plausibly allege well-established judicial activities. These circumstances avail Judge McCoy of judicial immunity and bar Barnes' § 1983 claims against him.

Next, Barnes also alleges that Judge McCoy "created a hostile environment through intimidation, affecting [her] right to a fair trial." ECF No. 33 at 7. But this is all Barnes has to say on the topic. *See generally* ECF Nos. 20, 33. And she was not without opportunity to do so. In particular, the Court asked Barnes in its questionnaire to state all facts known to her that she relies on to establish that the named Defendants violated her right to due process. ECF No. 6 at 4. The only information she provided about Judge McCoy in response was the same collection of

summary allegations the Court already reviewed. *See* ECF No. 20 at 4. Therefore, it need not retread old ground.

At most, it seems that Barnes objects to unnamed Defendants' "malicious [and] overzealous attempts to force [her] into hiring an attorney." ECF No. 33 at 6. Although Barnes does not explain whether Judge McCoy was among these Defendants, it is worth noting that it is a judge's obligation to ensure that any criminal defendant who desires to represent herself "'voluntarily and intelligently' elect[s] to conduct [her] own defense." *Martinez v. Ct. of Appeal of Calif., Fourth App. Dist.*, 528 U.S. 152, 161 (2000) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). This analysis involves making a potential *pro se* defendant "aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. To the extent Judge McCoy was satisfying his obligations under Supreme Court precedent to apprise Barnes of the risks associated with proceeding *pro se* in her own criminal defense, his actions were well within the scope of his judicial duties, entitled to judicial immunity, and certainly non-actionable.

To the extent Barnes alleges intimidating behavior by Judge McCoy, she does not explain what that is. At this stage in her case in this Court, Barnes has had the opportunity to answer a questionnaire and amend her complaint multiple times. If there was other activity Judge McCoy engaged in to "intimidate" her, which may or may not have been within the scope of his judicial role, Barnes had ample chances to explain what that activity was. But because she was unable to do so, the Court concludes that she has pleaded her best, albeit legally insufficient case. From all the factual allegations before the Court, the undersigned concludes that Judge McCoy's actions in this case were clearly judicial in nature. Because Barnes raises no plausible allegation that Judge McCoy acted beyond his judicial capacity or in the absence of all jurisdiction, Judge McCoy is entitled to judicial immunity.

C.     **Barnes' claims against Fimbres are unavailing.**

Barnes also sues Holly Fimbres, whom Barnes refers to as a "clerk/court official," in her individual capacity. ECF No 33 at 2. Fimbres allegedly "facilitated [and] ratified the unlawful proceeding by allowing it to proceed in the absence of judicial authority [and] by failing to intervene or halt the process despite having the duty to ensure lawful court operations." *Id.* To the extent Fimbres is a court clerk or operated in a clerk's capacity during the proceeding, immunity bars Barnes' claims against her. *Evans v. Suter*, No. H-07-1557, 2007 WL 1888308, at *3 (S.D. Tex. June 29, 2007), *aff'd*, 260 F. App'x 726 (5th Cir. 2007). If Fimbres is not a clerk or if she took any action outside of a clerk's capacity, Barnes also does not state a claim against Fimbres.

This is because even the most liberal construction of Barnes' pleadings does not explain what role Fimbres is supposed to have played other than being present during the challenged events. This is patently insufficient to state a claim against her.

D.     **Barnes' claims against Magnuson cannot proceed.**

1.     **Magnuson is not entitled to absolute prosecutorial immunity.**

Barnes also sues Craig Magnuson, "a city attorney for the Municipality of Lake Worth," in his individual capacity. ECF No. 33 at 2. While a city attorney is not necessarily a prosecutor, it appears Magnuson is. *See* Municipal Court, CITY OF LAKE WORTH, TEX., https://www. lakeworthtx.org/municipal-court (last visited February 26, 2026) (listing staff contacts, including names and titles). The Court thus analyzes whether Magnuson is entitled to absolute prosecutorial immunity as well.

Barnes' Amended Complaint describes a fraught personal history with Magnuson. Several weeks before Barnes' son's court date, Barnes alleges that Magnuson "attempted to have [her] arrested . . . , however the Judge was present [and] when he heard what happened he had the police

11

release her." ECF No. 33 at 5. She also reports an unspecified "first confrontation w/ [with] the city attorney . . . [that] started with . . . [Barnes and Magnuson] having a disagreement" of some kind. *Id.* Because of these circumstances, Barnes contends that the "arrest [and] detention" underlying her present case were "motivated by retaliation" from Magnuson. *See id.*

As for factual specifics in the present case, Barnes alleges that while attending her son's court hearing, she attempted to speak with her son and assist him in his proceedings. *Id.* at 3. However, Magnuson "became visibly upset [and] instructed [Barnes] to stop." *Id.* "A verbal exchange [then] ensued between [Barnes] [and] Mr. Magnuson over [her] right to assist her son[.]" *Id.* Then, allegedly "[w]ithout warning or justification, Mr. Magnuson escalated the situation by instructing the Bailiff, Jon [sic] Doe, to physically remove [Barnes] from [the] building [and] place her under arrest." *Id.*

Barnes describes how "[w]ithin seconds, [she] was getting booked into Lake Worth jail, where she was detained for 2 days on unknown charges initiated by Defendants." *Id.* at 6. According to Barnes, there was no judge present, and she was not "given notice of any pending charges []or informed of any warrant." ECF No. 20 at 3. Nor was she even taken before a "neutral magistrate[]" or permitted counsel before spending a combined four days in jail. *Id.* at 3-4. In sum, Barnes alleges that Magnuson "initiated [and] continued the prosecution despite knowing that no lawful court proceeding had occurred and no probable cause existed." ECF No. 33 at 6.

As discussed previously, "evaluating and presenting already-gathered evidence before a judicial tribunal are" kinds of prosecutorial activities "that qualify for absolute immunity." *Wearry*, 33 F.4th at 266 (citing *Singleton*, 956 F.3d at 780). And the same is true of a prosecutor's decision whether to bring charges. *Id.* In contrast, "acts performed in the course of administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation

of a prosecution or for judicial proceedings," do not entitle prosecutors to absolute immunity. *Loupe*, 824 F.3d at 539 (citing *Buckley*, 509 U.S. at 273). Indeed, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Hoog-Watson*, 591 F.3d at 438 (quoting *Buckley*, 509 U.S. at 273). Instead, such a prosecution only receives qualified immunity. *Loupe*, 824 F.3d at 539.

Any decision by Magnuson to pursue charges against Barnes is clearly a prosecutorial act. But that is not all Barnes alleges of him. Magnuson also allegedly ordered a bailiff to "forcibly" remove Barnes from her son's court proceeding and arrest her. *See, e.g.*, ECF No. 20 at 4. And although the Court cannot be certain, the circumstances do not suggest that any party had obtained a warrant before Magnuson ordered Barnes' arrest.

In *Loupe*, the Fifth Circuit concluded that a prosecutor's alleged order of a warrantless arrest was an act beyond the scope of absolute prosecutorial immunity. *Loupe*, 824 F.3d at 540. The court reasoned that when a prosecutor "'acts directly to deprive someone of liberty[,] he steps outside of his role as an advocate of the state before a neutral and detached judicial body and takes upon himself the responsibility of determining whether probable cause exists, much as police routinely do.'" *Id.* (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 914 (9th Cir. 2012)). It also found that "[n]othing in the procuring of immediate, warrantless arrests is so essential to the judicial process that a prosecutor must be granted absolute immunity." *Id.* (quoting *Lacey*, 693 F.3d at 914). Therefore, "[o]rdering a warrantless arrest is not intimately associated with the judicial phase of the criminal process; it is conduct outside the judicial process and therefore is not protected by absolute immunity." *Id.*

So, while absolute immunity protects Magnuson to whatever extent he initiated criminal proceedings against Barnes before the Tarrant County prosecutors took over, it does not shield him from his role in ordering Barnes removed from court and arrested. Magnuson is only at most entitled to qualified immunity for this conduct.

### 2.    Barnes does not state a § 1983 claim against Magnuson.

Barnes sues Magnuson and the other Defendants under § 1983 for malicious prosecution, denial of procedural due process, unlawful seizure, and, liberally construing Barnes' Amended Complaint, for a retaliative arrest in violation of the First Amendment. ECF No. 33 at 5-9; ECF No. 20 at 2.

### a.    Barnes does not state a malicious prosecution claim.

In general, a "governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 477 (N.D. Tex. 2019) (citing *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992)). And a plaintiff suing a governmental employee is not required to "fully anticipate the defense in [her] complaint at the risk of dismissal under Rule 12." *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc).

But 28 U.S.C. § 1915(e)(2) is not Rule 12, and "the wording of § 1915(e)(2)(B)(iii) suggests that qualified immunity is a factor the court should consider as part of the § 1915 review process." *Thomas v. United States*, No. 4:17-cv-240-A, 2017 WL 1133423 (N.D. Tex. Mar. 24, 2017); *see also* 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . seeks monetary relief against a defendant who is immune from such relief."). Additionally, since qualified immunity functions as an immunity from suit, rather than a mere defense to liability, *Pearson v. Callahan*, 555 U.S. 223, 237 (2009), the

Court finds it necessary in the present circumstances and for the present claim to itself analyze Magnuson's access to the qualified immunity defense.

This is because the Fifth Circuit recently specified that a § 1983 malicious prosecution claim did not exist in this circuit until after the time of Magnuson's conduct. *Santander v. Salazar*, 133 F.4th 471, 482-83 (5th Cir. 2025) ("Only in February 2023 did this court articulate the elements of a post-*Thompson* malicious prosecution claim."); *see also Thompson v. Clark*, 596 U.S. 36, 42 (2022) (expressly recognizing a § 1983 malicious prosecution claim); *Santander*, 133 F.4th at 482 (listing the necessary elements of a § 1983 malicious prosecution claim, which include an "unlawful Fourth Amendment seizure" (citing *Armstrong v. Ashley*, 60 F.4th 262, 278-79 (5th Cir. 2023))). And precisely when the Fifth Circuit first articulated this cause of action is a controlling part of the qualified immunity analysis.

"[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established *at the time of the challenged conduct*." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (emphasis added) (internal quotation marks omitted). But if the defendant government employee allegedly committed the challenged conduct prior to February 2023, he "could not have violated clearly established law because, at the time, there was no clearly established law in this circuit to violate." *Santander*, 133 F.4th at 483. Such is the case with Magnuson. Barnes alleges that Magnuson ordered her removed from court and arrested on January 18, 2023. ECF No. 33 at 3; ECF No. 20 at 4. She then went to jail for four days before criminal proceedings were initiated. *See* ECF No. 20 at 6. Although *Armstrong* was decided scarcely one month later on February 15, 2023, that one month is dispositive of Barnes' claim.

"Regardless of whether [Plaintiff] alleges a plausible claim for malicious prosecution, such a claim cannot overcome qualified immunity." *Santander*, 133 F.4th at 482. So, Magnuson's conduct could not have violated a clearly established right, which inarguably entitles him to immunity from Barnes' § 1983 malicious prosecution claim.

### b.    Barnes does not state a denial of procedural due process.

Barnes next alleges that "Defendants deprived [her] of [her] liberty by arresting and jailing her. . . . The deprivation occurred w/o [without] due process, as no judge was present, no lawful hearing was conducted [and] no opportunity to be heard was afforded." ECF No. 33 at 9. She further alleges she was detained for four days "without arraignment, explanation or access to legal counsel." ECF No. 20 at 6.

"To state a claim in an individual capacity suit brought under § 1983, a claimant must allege a violation of the Constitution or federal law by a person acting under color of state law." *Fisher v. Dallas Cnty.*, 299 F.R.D. 527, 534 (N.D. Tex. 2014) (Fitzwater, J.). Barnes must also establish that Magnuson was either personally involved in the violation or that his wrongful actions were causally connected to the violation. *Jones v. Lowndes Cnty.*, 678 F.3d 344, 349 (5th Cir. 2012); *see also Jackson v. Duff*, 161 F.4th 343, 348 (5th Cir. 2025) ("§ 1983 requires . . . individual causation" in a suit against an individual in his individual capacity).

The Fourteenth Amendment provides that no person shall be deprived of life, liberty, or property without due process law. U.S. CONST. amend. XIV, § 1. Thus, deprivation of liberty constitutes a due process violation. "Prohibition against improper use of the formal restraints imposed by the criminal process lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (internal quotation marks omitted). And the specific right to procedural due process "is most

16

squarely implicated" and "raise[d] [] immediate[ly]" in "prolonged-detention cases." *Jauch v. Choctaw Cnty.*, 874 F.3d 425, 430-31 (5th Cir. 2017).

The Fourth Amendment requires "a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). And while "the Fourth Amendment does not compel an immediate determination of probable cause upon completion of administrative steps incident to arrest," the Supreme Court has found that a judicial determination of probable cause within forty-eight hours will "as a general matter" suffice. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Where an arrested individual does not receive a probable cause determination within that timeframe, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance" justifying the lapse. *Id.* at 57.

Here, Barnes alleges that she was housed for at least four days in two different jails without ever being taken before a magistrate or other judge for a probable cause determination. *E.g.*, ECF No. 20 at 7. Barnes' § 1983 procedural due process claim thus plausibly alleges a constitutional violation that would fall to Magnuson to rebut. *See Buckenberger v. Reed*, 342 F. App'x 58, 63 (5th Cir. 2009) ("The failure to bring [Plaintiff] before a magistrate within forty-eight hours to determine if probable cause existed is a violation of [Plaintiff's] Fourth Amendment rights.").

The operative question then is whether Magnuson was causally linked to this violation. "Liability under § 1983 requires some level of personal involvement in the claimed deprivation." *Lewis v. Meier*, No. 3:01-cv-1574-R, 2002 WL 31156668, at *3 (N.D. Tex. Sept. 24, 2002). Barnes alleges that after her arrest on January 18, 2023, she repeatedly requested a hearing before a magistrate "as required by ***Texas Code of Criminal Procedure articles 14.06 & 15.17***," but no hearing ever came. ECF No. 20 at 7 (emphasis in original). She places the blame for this on

Magnuson. *See id.* (“**MADE ME SIT 2 DAYS IN** [Lake Worth] **JAIL, REFUSING TO BRING ME BEFORE A MAGISTRATE** . . . **JUST CUZ THE MUNICIPAL ATTORNEY GOT BUTT HURT!!!! THAT’S IT!!!!** (emphasis in original)).

And yet as for factual specifics, there are few. From Barnes’ pleadings, the Court can glean that Magnuson allegedly ordered Barnes’ arrest and initiated criminal proceedings, but that is all. Barnes draws no plausible connection between the alleged deprivation and Magnuson’s conduct other than the inferential argument that Magnuson’s conduct spurred her prosecution, and the eventual due process violations, into being. But this does not suffice, because once Barnes was in custody, the obligation to ensure she appeared before a magistrate would not have fallen to the Lake Worth prosecutor but instead to the arresting officer.

The Texas Code of Criminal Procedure provides that “the person *making the arrest* or the person *having custody* of the person arrested shall take the person arrested . . . not later than 48 hours after the person is arrested . . . before a magistrate,” Tex. Code Crim. Pro. art. 14.06(a) (West 2026) (emphasis added). The Court is aware of no law or practice where a *prosecutor* bears the constitutional responsibility of bringing an arrestee before a magistrate. *See also McLaughlin*, 500 U.S. at 61 (Scalia, J., dissenting) (recounting common law history of the practice of bringing an arrestee before a magistrate); *id.* (citing *Wright v. Court*, 107 Eng. Rep. 1182 (K. B. 1825) (“[I]t is the duty of *a person arresting* any one on suspicion of felony to take him before a justice as soon as he reasonably can” (emphasis added))). Although Barnes sufficiently pleads a constitutional violation, she does not plausibly connect Magnuson to that violation.

For similar reasons, even assuming Barnes has sufficiently pleaded other procedural due process violations (such as an alleged lack of arraignment, a failure to apprise her of the charges against her, and an alleged denial of access to counsel), she does not plausibly explain how

Magnuson, a prosecutor, was involved in these potential violations that would have occurred while Barnes was in the custody of law enforcement personnel, or offer authority for why he as a prosecutor bore and violated such obligations.

Finally, to the extent Barnes also seeks to state a § 1983 procedural due process claim for Magnuson's alleged "non-judicial proceeding," where he asked questions of Barnes' son outside the presence of a judge, *see, e.g.*, ECF No. 20 at 4, she is not successful as she does not have Article III standing to challenge such a potential alleged constitutional violation that befell her son but not her. *See Martinez v. Rojo*, No. 1:17-cv-00102-BU, 2020 WL 2542612, at *2 (N.D. Tex. May 19, 2020) ("It is well-established that parents lack standing to bring individual claims under § 1983 based solely upon deprivation of a child's constitutional rights.").

###                    c.            Barnes does not state an unlawful seizure and retaliatory arrest.

Next, Barnes brings a § 1983 Fourth Amendment claim for the alleged unlawful seizure of her person. She alleges that she was seized and arrested at the Lake Worth municipal court without probable cause. *See, e.g.*, ECF No. 33 at 9; ECF No. 20 at 3.

The law provides that "[a] police officer's warrantless arrest of a person violates the Fourth Amendment unless the arrest is supported by probable cause." *E.g.*, *Pineda v. City of Hous.*, 124 F. Supp. 2d 1037, 1044 (S.D. Tex. 1999) (citing *Beck v. Ohio*, 379 U.S. 89 (1964)); *see also* U.S. CONST. amend. IV. To prevail on a § 1983 claim for false arrest, false imprisonment, or unreasonable seizure in violation of the Fourth Amendment, a plaintiff must prove that the defendant or defendants did not have probable cause to arrest her. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." (emphasis in original)); *see also Atwater v. City of Lago Vista,* 532

U.S. 318, 354 (2001) (officers may conduct warrantless arrests, even for misdemeanor violations, if supported by probable cause).

"Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Instead, a "practical, nontechnical probability . . . is all that is required." *Id* (internal quotation marks omitted). It is "not a high bar," and it is based on "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It is a "flexible, common-sense standard." *Brown*, 460 U.S. at 742. Importantly, the "Court judges probable cause by the facts that the officer knew at the moment of the arrest," and whether an arrestee was ever convicted is immaterial to the analysis. *See Loftin v. City of Prentiss*, 539 F. Supp. 3d 617, 624-25 (S.D. Miss. 2021) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

Here, Barnes alleges that she was charged with Hindering Proceedings by Disorderly Conduct. ECF No. 20 at 6. In Texas this is a Class A misdemeanor committed when a person "intentionally hinders an official proceeding by noise or violent or tumultuous behavior or disturbance" or "recklessly hinders an official proceeding by noise or violent or tumultuous behavior or disturbance and continues after explicit official request to desist." Tex. Penal Code § 38.13 (West 2026). Considering the elements of this offense under Texas law and the circumstances of Barnes' case, the undersigned finds that Barnes does not plausibly demonstrate the absence of probable cause.

Barnes contends that during her son's court date, she "whispered" guidance to him while Magnuson was questioning him. ECF No. 20 at 6. Magnuson then allegedly became visibly upset and instructed Barnes to stop talking with her son. ECF No. 33 at 3. What followed was a "verbal exchange" between Barnes and Magnuson that involved yelling. *See id.*; ECF No. 20 at 6. The way Barnes tells it, Magnuson was the one who "escalated the situation," ECF No. 20 at 6, but she does not appear to deny that there was some kind of fraught episode between the two. While at most Barnes contends there "was no public disturbance," *id.*, that is immaterial to the charge she received. So long as there was a noisy or violent disturbance within the courtroom, that suffices. And Barnes' pleadings do not rebut the impression that that is exactly what happened. From the circumstances, the Court cannot conclude that no such disturbance occurred, or that Magnuson lacked probable cause to order the bailiff to remove and arrest Barnes.

Setting aside the question of Magnuson's causation of Barnes' seizure, Barnes' § 1983 Fourth Amendment claim against Magnuson cannot proceed because she does not plead facts showing the absence of probable cause. To the extent Barnes attempts to raise a § 1983 First Amendment retaliatory arrest claim as well, *see* ECF No. 20 at 2 (raised for the first time in her response to the Court's questionnaire), that claim also is ineffective. *See Nieves v. Bartlett*, 587 U.S. 391, 408 (2019) (a retaliatory arrest claim fails as a matter of law if probable cause exists).

### E.      Barnes' procedural due process claim against the John Doe bailiff can proceed, but her others cannot.

Barnes also sues an unidentified bailiff of the Lake Worth municipal court, whom she names anonymously as John Due, in his individual capacity. ECF No. 33 at 2. As discussed previously, the Court construes Barnes' Amended Complaint to assert all her § 1983 claims against each Defendant. For the reasons outlined previously as to Barnes' claims against Magnuson, Barnes also does not state a § 1983 claim against John Doe for malicious prosecution or

constitutional claims under the Fourth or First Amendments. The Court should dismiss each of those claims without leave to amend. That leaves Barnes' § 1983 claim against John Doe for a procedural due process violation.

As explained, Barnes plausibly alleges at least one violation of procedural due process. While the Court found Barnes did not state a claim based on that alleged violation against Magnuson, it finds Barnes has stated a claim based on that alleged violation against John Doe.

Barnes alleges that, upon Magnuson's instruction, John Doe "physically remove[d]" Barnes from the building and "place[d] her under arrest." *Id.* at 3. Then, "[w]ithin seconds" Barnes "was getting booked into Lake Worth jail, where she was detained for 2 days on unknown charges." *Id.* at 4. Barnes is quite clear in her allegations that this individual, ostensibly a bailiff for the Lake Worth municipal court, was nonetheless the "arresting officer." *Id.* at 7.

As discussed, the Texas Code of Criminal Procedure provides that "the person making the arrest or the person having custody of the person arrested shall take the person arrested . . . not later than 48 hours after the person is arrested . . . before a magistrate." Tex. Code Crim. Pro. art. 14.06(a) (West 2026); *see also id.* art. 17.033 (West 2026) (requiring arrestee's release on bond after twenty-four hours without a magistrate probable cause finding if arrested for a misdemeanor).

The arresting officer here was John Doe. While it is possible under the Texas Code of Criminal Procedure that the obligation to take Barnes before a magistrate could have fallen to a separate law enforcement officer at the Lake Worth jail, Barnes does not mention anyone else by name, and her allegations clearly suggest that the bailiff was not only the arresting officer but was involved in Barnes' stay in jail as well. *See, e.g.*, ECF No. 33 at 7 ("John Doe[] Defendant arrested [and] jailed Plaintiff"); *id.* ("Within seconds [of her arrest by John Doe], Plaintiff was getting booked into Lake Worth jail.").

Under these circumstances, Barnes has plausibly alleged that John Doe did not comport with the Texas Code of Criminal Procedure. But importantly, a plausible violation of Texas state law does not necessarily translate into a plausible violation of Barnes' constitutional rights. *Jones*, 678 at 352 ("[A]n alleged violation of a state statute does not [automatically] give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution.").

Under the circumstances of this case, though, Barnes has plausibly alleged such a constitutional violation by John Doe. She pleads that she was never taken to a magistrate, which patently violates the Fourth Amendment. *See generally Gerstein*, 420 U.S. 103 (1975); *McLaughlin*, 500 U.S. 44 (1991). Moreover, states have license and discretion to set their own criminal procedural law, so long as that law meets the Fourth Amendment's requirements. *Buckenberger*, 342 F. App'x at 62 ("States are allowed to adopt their own procedures to satisfy the Fourth Amendment requirements." (citing *Gerstein*, 420 U.S. at 123-25 ("Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause . . . and this determination must be made by a judicial officer either before or promptly after arrest."))). So because Barnes has plausibly alleged that John Doe was not only obliged under the terms of Texas criminal procedural law to take her before a magistrate, but failed to do so, she has plausibly causally connected him to the Fourth Amendment constitutional violation she alleges. *See id*. at 62-64 ("[W]e cannot conclude as a matter of law that [a police officer's] failure to [abide by the terms of the Louisiana Code of Criminal Procedure] was not causally connected to the deprivation [of plaintiff-appellant's Fourth Amendment rights].").

To this end, the Court finds that Barnes has plausibly alleged a constitutional violation against an official acting under color of law who was also causally connected to the alleged

violation. Therefore, the Court should not dismiss Barnes' § 1983 claim for a procedural due process violation against John Doe.

**F.   Barnes does not state § 1983 claims for municipal liability against either the City of Lake Worth or Tarrant County.**

Barnes also sues the City of Lake Worth and Tarrant County. ECF No. 33 at 2. Importantly, a municipality cannot be liable under § 1983 on a *respondeat superior* theory simply because it employs an individual who allegedly violated a plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, to allege municipal liability against the City of Lake Worth or Tarrant County under § 1983, Barnes must plead facts showing that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Monell*, 436 U.S. at 691. Barnes does not satisfy this pleading burden.

Although Barnes identifies four alleged policies attributable to the City of Lake Worth and/or Tarrant County for which she seeks to hold the relevant municipalities liable, only one concerns a constitutional violation that Barnes has adequately pleaded facts to support: "Refusal to Present Arrestees Before a Magistrate." *See* ECF No. 20 at 7-8 (listing alleged policies). Barnes also alleges that one or both of these municipalities had a policy or custom of "Arresting Without Probable Cause [and] Proceeding Without Jurisdiction," "Prosecuting Without Investigation or Establishing Legal Basis," (which she alleges only of Tarrant County), and "Ongoing Retaliation [and] Obstruction of Constitutional Claims," *id.*, but her pleadings do not support that these policies, even if they were to exist, actually deprived her of her constitutional rights.

As previously noted, Barnes did not plead facts to demonstrate the absence of probable cause in her arrest, which defeats both a Fourth Amendment claim and a First Amendment retaliative arrest claim. Additionally, even if absolute prosecutorial immunity did not bar her

claims against Sorrells and Taylor, Barnes does not plausibly plead facts to allege a complete absence of investigation on the Tarrant County prosecutors' part. Indeed, except for one, each of the allegedly unconstitutional policies Barnes attributes to the municipal Defendants are unsupportable because she has not plausibly demonstrated that any allegedly causative constitutional violations stemming from those policies even happened.

Although Barnes now alleges an ongoing practice of retaliation, she only cites three incidents in support. The first is Magnuson's alleged "deni[al] [of her] right to challenge jurisdiction" in a separate Lake Worth municipal court proceeding in April 2025. *See* ECF No. 20 at 8. The second and third are two traffic incidents in January 2024 and January 2025 with Lake Worth police officers, one of which also resulted in arrest. *Id.* at 10.

But these allegations do not plausibly state claims for retaliation in violation of the First Amendment. To state a First Amendment retaliation claim, Barnes must assert facts showing "(1) [she was] engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [her] exercise of constitutionally protected conduct." *Rios v. Perez*, 777 F. Supp. 3d 727, 757 (W.D. Tex. 2025) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)) (listing the elements).

First, in the absence of specification from Barnes, the Court assumes her distinct allegation of ongoing retaliation concerns the protected activity Barnes engaged in by filing the present lawsuit in this Court in December 2024. *See Lehman v. Guinn*, 762 F. Supp. 3d 498, 504 (W.D. La. 2025) (citing *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979)) ("Filing a lawsuit against a local government is a First Amendment-protected activity). If this assumption is incorrect, the causal connection Barnes draws between Magnuson's and certain unnamed Lake

Worth police officers' conduct and some other protected activity of Barnes' is even more unclear, even more causally tenuous, and unavailing to state a claim.

Second, it is not clear how a desire to challenge the City of Lake Worth's standing over a municipal proceeding in its own municipal court, *see* ECF No. 20 at 9, is the kind of opportunity that, if revoked, could prompt a person of ordinary firmness from filing a lawsuit against the City of Lake Worth in order to vindicate her allegedly unlawful arrest and jail stay. Nor does Barnes plausibly plead how Barnes' lawsuit in this Court substantially motivated Magnuson's conduct in the April 2025 proceeding.

Third, to the extent Barnes premises her retaliation claim on the activities of certain Lake Worth police officers in pulling her over and even arresting her, she offers scarce facts concerning these encounters other than summary conclusions that the officers lacked probable cause. *See id.* at 10. This deficiency ends a First Amendment retaliation claim premised on an allegedly unlawful arrest. *Rios*, 777 F. Supp. 3d at 758. Moreover, even if Barnes had sufficiently pleaded the absence of probable cause, there is simply no plausible connection drawn between these independent incidents with Lake Worth police officers and Barnes' filing of the present lawsuit (or any other protected activity).

Accordingly, the Court concludes that Barnes has not plausibly alleged any ongoing retaliation that has occurred not just since she filed this suit, but also since the incidents in January 2023 that underly it. *See generally* ECF No. 20 at 8-10. And other than the alleged refusal to take Barnes before a magistrate, the Court also concludes that Barnes has not plausibly alleged any constitutional violation linked to the policies she ascribes to the City of Lake Worth and Tarrant County. Therefore, beyond the policy Barnes describes as "Refusal to Present Arrestees Before a

Magistrate," ECF No. 20 at 7, no other alleged policy could constitute a viable § 1983 claim against either municipal Defendant.

Concerning Barnes' claims regarding the alleged policy of "Refusal to Present Arrestees Before a Magistrate," the Court notes that a municipality's official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

"The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (internal citation omitted).

Regarding the policy at issue, Barnes does not appear to allege the existence of official, written policies to deny arrestees access to a magistrate judge. *Contra* ECF No. 20 at 7 ("These policies were carried out by both **City of Lake Worth officials & Tarrant County Prosectors, jails & officials,** acting either under formal written policy or established custom & practice." (emphasis in original)); *but see generally* ECF Nos. 20, 33 (no allegations of written policies). Instead, the Court construes Barnes' allegations to alleged customs found in the City of Lake Worth and Tarrant County.

"To prove the existence of a custom, a plaintiff must demonstrate a 'persistent, widespread practice of city officials . . . which, although not authorized by officially adopted and promulgated

policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Harmon v. City of Arlington*, 478 F. Supp. 3d 561, 574 (N.D. Tex. 2020) (quoting *Johnson*, 958 F.2d at 94)). But "a customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski v. City of Hous.*, 237 F.3d 567, 581 (5th Cir. 2001). Indeed, "a single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom." *Vess v. City of Dall.*, 608 F. Supp. 3d 434, 449 (N.D. Tex. 2022) (quoting *Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998) (Fish, J.)).

Barnes certainly alleges that over the course of her four days between Lake Worth and Tarrant County jail in January 2023, she was never taken before a magistrate. But she does not demonstrate that this conduct occurred to her on more than one occasion, nor can she point to other alleged incidents where this conduct occurred. She does cite a previous incident where the same bailiff allegedly detained her, *see, e.g.*, ECF No. 20 at 4, 6, but she was not arrested then, much less denied a hearing before a magistrate. And she argues that "never giv[ing] [her] a probable cause hearing . . . reflects either a formal policy or at minimum of the jail & City officials to deny fundamental due process." *Id.* at 7-8. But a single incident is generally insufficient to establish a custom for purposes of *Monell* liability.

Indeed, courts in this circuit have regularly found against plaintiffs who alleged many more incidents of unconstitutional behavior than Barnes does. *See Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002) ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces."); *Moreno v. City of Dall.*, No. 3:13-cv-4106-B, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) ("Although Plaintiff has pointed to eight instances, over the course of five years . . . these allegations do not support an inference of a pattern of abuses that

can be distinguished from mere isolated incidents."). A singular incident of unconstitutional conduct in a municipality of any size is generally not enough to establish a "pattern so common and well-settled as to constitute a custom that fairly represents municipal policy." *Taylor v. El Centro Coll.*, No. 3:21-cv-0999-D, 2022 WL 102611, at *9 (N.D. Tex. Jan. 10, 2022) (finding two alleged incidents of unconstitutional conduct did not sufficiently establish a custom).

Because Barnes can offer no more than a singular incident of any unconstitutional conduct, this forecloses her § 1983 claims against the City of Lake Worth. And although she does not sue Tarrant County for a policy premised on certain alleged due process violations she faced while in Tarrant County custody, *compare* ECF No. 20 at 3 (Barnes alleging that Tarrant County "subjected [her] to medical experiments and test[s] [and] her safety and health [were] compromised"), *with id.* at 7-8 (Barnes listing the alleged policies), even if she did, Tarrant County cannot be liable for such conduct for the same reason.

To be sure, in "rare circumstances, a single unconstitutional action may be sufficient to impose municipal liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (quoting *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016) (citing *Pembaur*, 475 U.S. at 480)) (internal quotation marks and citation omitted). But this exception is inapplicable in Barnes' case.

An official policymaker is a person who has "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). "Determining who is a policymaker is a matter of [state and local] law, requiring a court to identify those 'officials whose decisions represent the official policy.'" *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 359 (5th Cir. 2014); *Praprotnik*, 485 U.S. at 112.

29

The Fifth Circuit "has long distinguished between final decisionmaking authority and final policymaking authority" when establishing municipal liability. *Valle*, 613 F.3d at 542. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dall.*, 541 F.3d 545, 549 (5th Cir. 2008). Additionally, "[t]he finality of an official's action does not therefore automatically lend it the character of a policy." *Id.* at 550.

Here, it is plain enough that neither John Doe nor any other unnamed law enforcement or jail officer in Lake Worth or Tarrant County that may have subjected Barnes to unconstitutional conduct while in confinement are individuals who possess final policymaking authority for either municipality. Barnes does not identify any legal authority, nor is the Court aware of any, that identifies a bailiff, a police officer, or a detention officer as a final policymaker for his municipality. *See Democracy Coal. v. City of Austin*, 141 S.W.3d 282, 294 (Tex. App.—Austin 2004, no pet.) (finding that city police officers, even though they believed they acted in accordance with official policy, were not final policymakers); *Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990) ("It has long been recognized that, in Texas, the county sheriff is the county's final policy maker in the area of law enforcement.").

Because Barnes does not demonstrate that the individuals who allegedly violated her constitutional rights were final policymakers for their respective municipalities, their singular incidents of unconstitutional conduct do not establish a basis for municipal liability against the City of Lake Worth or Tarrant County. Since she has not plausibly pleaded that either municipality

possessed a policy that caused her constitutional harm, she does not state a § 1983 claim against either Defendant.

### G. Dismissal without leave to amend

It is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming*, 281 F.3d at 161. Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Jones*, 188 F.3d at 327. Barnes brings various claims, many of which are barred by either absolute prosecutorial or judicial immunity. Where those claims are actionable and not barred by immunity or clear circuit precedent, Barnes' factual allegations are almost all insufficient to survive dismissal. Notably, the Court previously offered Barnes several opportunities to fortify her pleadings, and she was unable to do so. She responded to the Court's questionnaire and amended her complaint but still did not state a claim other than her one due process claim against the bailiff, John Doe. *See* ECF No. 20; *see, e.g.*, ECF No. 33.

The undersigned thus concludes that Barnes has pleaded her best, though legally insufficient case, and further amendment would be futile for each of the claims for which the undersigned has recommended dismissal. Accordingly, the Court should dismiss Barnes' Amended Complaint without leave to amend, except for her singular § 1983 claim for a procedural due process violation against Defendant John Doe, which the Court should not dismiss.

### IV. CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **DISMISS** this suit pursuant to 28 U.S.C. § 1915(e)(2) in its entirety **EXCEPT** for Plaintiff's claim under § 1983 for a procedural due process violation against Defendant John Doe.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district 6 court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on March 2, 2026.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

32